IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GEORGE KIRK, | : |
| | : C.A. No. |
| Plaintiff, | : |
| | : |
| v. | : |
| | : **JURY TRIAL DEMANDED** |
| PITTSBURGH BOARD OF | : |
| EDUCATION, a public entity; | : |
| ANGELA MIKE, individually; and | : |
| JERRI LIPPERT, individually, | : |
| | : |
| Defendants. | : |

## COMPLAINT

### Jurisdiction

1. This Court has jurisdiction over this complaint pursuant to 28 U.S.C. § 1331 and § 1343(a)(3). It also has jurisdiction over Kirk's Title VII claims by virtue of 42 U.S.C. § 2000e.

### Parties

2. The Plaintiff, George Kirk, is an adult individual who resides in the Western District of Pennsylvania.

3. The Defendant, Pittsburgh Board of Public Education (Pittsburgh School District) is a governmental entity in the Western District of Pennsylvania that provides free public education to students living within its political limits.

4. The Defendant Angela Mike is an adult individual who resides in the Western District of Pennsylvania.

5. The Defendant Jerri Lippert is an adult individual who resides in the Western District of Pennsylvania.

## Facts

6. George Kirk has served as a teacher with Pittsburgh Public Schools for over twelve years.

7. Kirk possesses a teaching certification in vocational education and he is currently assigned to the Career and Technical Education (CTE) Department where he teaches welding.

8. Kirk also holds a Principal Certificate and a Director's Certificate. Therefore, he is qualified to hold supervisory positions in the Pittsburgh School District, including the supervisory positions that are the subject of this action.

9. Angela Mike is the current director of the Career and Technical Education Department of the Pittsburgh School District. As a consequence of her position and the powers delegated to her by the Pittsburgh School District, Mike, at all times pertinent to this action, acted under color of state law.

10. Dr. Jerri Lippert is Mike's supervisor. Lippert is the Chief Academic Officer for the Pittsburgh School District. As a result of her position and the authority and power delegated to her by the Pittsburgh School District, Lippert, at all times pertinent to this action, acted under color of state law.

11. As will be detailed in this complaint Lippert and Mike worked to retaliate against Kirk due to Kirk's First Amendment activity by eventually convincing the School Board members to cease providing instruction in welding, the subject area in which Kirk has his certificate.

12. Kirk has had a commendable career with Pittsburgh School District. He has focused on the most challenging students in the school district. He has worked extensively with gang members and other students with disciplinary problems or who have been on the verge of dropping out. Kirk has taken these students and turned many around, encouraging them to learn a trade and become productive. His students have won numerous regional, state and even national awards for their achievement. Through his contacts with private industry, Kirk has found jobs for many of his students.

13. Kirk also has administrative experience, as he was the Faculty Manager at the South Vocational Technical High School. In that capacity, he was responsible for managing a large operating budget and had supervisory responsibility approximately 40 staff members.

14. Kirk also has experience drafting successful grant proposals.

15. In spite of his achievements and qualifications, Kirk has not been able to advance to a supervisory position in the CTE department. This is due to a bias on the part of Pittsburgh School District decision-makers who have selected candidates for supervisory positions in the CTE department. They have exercised their authority to place only women in such positions.

16. In fact, supervisory positions in the CTE department have been awarded exclusively to women for almost a decade.

17. Worse, after Kirk filed charges with the Pennsylvania Human Relations Commission and the Equal Employment Opportunity Commission challenging this bias in favor of women, his female supervisors and the policy makers in the School District began to retaliate against him.

18. Currently, the supervisory and/or administrative staff of the CTE Department is predominantly female. In fact, a male has not been selected to file a vacant supervisory position in the CTE Department for more than five years. The only male occupying an administrative position in the last 5 years had been in that position for 16 years.

19. Over the years covered by this action, when interview panels, which are responsible for interviewing and selecting applicants for open supervisory or administrative positions, are convened, those panels have been comprised solely of women. Whether a position has been selected through the interview panel process or otherwise, the result has been the selection of women over more qualified men.

20. In late January 2010, the Executive Director's position in the CTE Department became vacant.

21. The School District temporarily placed Angela Mike, a cosmetology teacher with little or no management or supervisory experience, to serve as Acting Executive Director. This selection process deviated from the normal procedures, as it was made without posting the position and without seeking applicants for the position. At the time, there were several males who were more qualified than Mike for the position, including Kirk, who, if given the opportunity, would have sought out the position. However, the males were not given the opportunity, and the selection of Mike was extraordinary, as it occurred outside the normal and typical channels for filling such a position.

22. When the decision to place Mike in the position was made, she did not have the proper certifications to hold the position. She had not yet completed the studies and

steps that would have entitled her to hold a supervisory position in the CTE department.

23. Later, when Mike completed her studies and secured a Director Certificate, she was appointed to the CTE Department's permanent Executive Director. This appointment was made without following proper channels, also.

24. Hence, Mike's promotion to Executive Director of CTE was extraordinary. Mike had almost no supervisory or administrative experience when she was selected to serve as the head of the Department. In fact, Mike experienced a remarkably rapid rise to such a high executive position. She went from a role of cosmetology teacher, to curriculum specialist for approximately one year, then to the role of Acting Executive Director.

25. When Mike was appointed to the Acting Executive Director position, her vacated position Curriculum Project Manager, was temporarily assigned to Casey Reynolds, who was permanently placed in the position following Mike's official appointment to Executive Director. These vacancies were not posted.

26. In May 2010, the Supervisor of Career and Technical Education position became vacant. Linda Wolfgang, who came from outside the School District, and Kirk were the only applicants. Wolfgang was offered the job in spite of the fact that she lacked administrative experience. The reasons given for her selection were duplicitous and inconsistent with public school district decisions.

27. At the beginning of the 2010-2011 school year, Theresa Carson, another female, who had been furloughed was given a job as an a "teacher on special assignment in what was essentially an "acting supervisor" position, even though she did not have

appropriate certification and no prior administrative experience. Once again, Kirk was not considered for that position.

28. Kirk was available for the vacated position and had all of the supervisory certificates necessary to hold the job as an actual supervisor. Therefore, the creation of a "teacher on special assignment" position deliberately discriminated against Kirk and other males. This female teacher, who had no supervisory or administrative background, was essentially assigned supervisory activities. She was also encouraged to enroll in and attend IUP's Director and Supervisory program, so that she could be awarded a supervisory certificate.

29. This ongoing selection of females for supervisory and administrative positions in the CTE Department has occurred in an overall environment that favors females. Thus, programs that attract principally male students are short changed when it comes to supplies and materials necessary for their success.

30. During the 2010-2011 school year, Kirk requested a minimal amount of funds in order to purchase required safety materials such as safety glasses and welding jackets for his students. Because his welding class is predominately male, Mike denied his request and stated that there was no money left in the budget for expenditures. Later that year, however, Mike took the initiative to approach the School Board and acquire $2,740.00 so the cosmetology students could travel to Baltimore, MD to observe a hair show.

31. Kirk filed his charge of discrimination in October of 2010. In that charge, Kirk asserted that he had been a victim of systematic gender discrimination. Mike and Lippert learned of the charge and embarked upon a no-holds-barred, ever escalating

campaign of retaliation against Kirk. This campaign include instances of false discipline, interference with Kirk's ability to recruit students, and eventually with the decision to terminate the welding program, a step that will affect numerous students, all in an effort to retaliate against Kirk and cause him to lose his job.

32. In early 2011, Mr. Kirk wrote a grant proposal for a Welder Workforce Development Grant, which sought funding for a summer program that would provide students who had belatedly entered the welding program with an opportunity to acquire the necessary skills and equipment to obtain employment with local employers. Kirk sought the grant to assist students who had lost significant instructional time due to the Pittsburgh School District's moving the welding program from Connelley building to South Annex at the end of 2010. More than a month of school time was lost. In March 2011, Mr. Kirk's proposal was selected for funding by the group administering the grant.

33. By this time, Mike and other policy makers in the chain of command were aware of Kirk's EEOC and PHRC charges, as well as his efforts to garner community and industry support for the welding program. In other words, Kirk has been instrumental in working with students, parents, unions and employers to promote employment opportunities for his students, once they graduate from high school.

34. In order for the grant to come to fruition, Kirk needed Mike's assistance. As the Executive Director of the Department, Mike was the individual who possessed the authority to approach the School Board and request the use of school property for the summer program. Rather than considering the best interests of the students, Mike

acted upon her desire to retaliate against Kirk and refused to present the grant to the Board. Therefore, the funds could not be dispersed to the School District.

35. In order to save his grant proposal and assist his students, Kirk approached several welding associations in the Pittsburgh area, and eventually found an organization that volunteered the use of its training facilities for the summer program. Kirk employed the grant to train ten students over the summer; however, this was done independent of the School District.

36. After Kirk filed the above Charge, the Respondent continued to discriminate against Kirk based on his gender and also engaged in retaliation.

37. The Respondent continued in its practice of reserving supervisory and/or administrative positions within the CTE department for females. The conduct is systemic and insidious.

38. In April 2011, Mr. Kirk was unfairly reprimanded and received a critical incident report based upon his attempts to recruit new students for the welding program during his lunch period.

39. In July 2011, Mr. Kirk was placed on furlough for the upcoming school year. He was not offered an "acting" position as was the case with Carson the preceding school year.

40. Beginning in the fall of 2011, Mike began a course of conduct designed to impair Mr. Kirk's ability to instruct his students. Specifically, Mike impeded Mr. Kirk's attempts to acquire safety materials and necessary instruction supplies for his students.

41. Over the course of time, Mike also modified the grading structure as to de-emphasize the importance of the standardized tests, and moved forward the time frame for

conducting the industry certification tests. This was done as part of a scheme to undermine Kirk's statistics so that Mike could attack his performance.

42. In the fall of 2011, Kirk was not offered a vacant administrative position, the Perkins' funding coordinator position, while he was on furlough status. Instead, a female Davida Cavallo was offered the job. As described above, in 2010 a furloughed female teacher was given a special position in the CTE Administrative Department, when she was furloughed. The same pattern was not followed when Kirk was furloughed.

43. Instead, Cavallo was given the assignment. She was not as qualified and did not possess the requisite certificates. Kirk had the appropriate certification for the supervisory position. Cavallo had never worked as a supervisor in the secondary school setting, while Kirk had supervisory experience.

44. Kirk was also ignored when a curriculum supervisory position was temporarily open, while he was placed on furlough.

45. In the November of 2011, Mike attempted to place Kirk on an Employee Improvement Plan. However, she did not follow policies and could not enlist Kirk's principals who would have to participate in the venture.

46. In December 2011, Mr. Kirk's welding program was eliminated from the School District. This drastic measure, which affected students as well as Kirk, was engineered by Lippert and Mike. They presented untruthful information about the program to the school board and manipulated statistics to justify the elimination of the welding program. There have always been at least 40 students signed up for the welding program, and it is one of the most popular CTE courses. In spite of this, and in spite of Kirk's historic success in finding jobs for students who graduate with a

welding certificate, Mike and Lippert put their own retaliatory interest ahead of all of these facts, injuring not only Kirk, but the students he could teach, and convinced the School Board to eliminate Kirk's welding program.

47. Kirk is the only teacher who teaches welding in the School District, and therefore all the students who took welding will not be able to finish the program or seek jobs as welders in the community.

48. Currently, the Department Head, Angela Mike is on leave, and Linda Wolfgang, who only has supervisor certification, has been placed in the position of acting director, even though Kirk now has director certification.  Thus, the retaliation against Kirk and the general discrimination against males has continued to the present.

49. The events and circumstances described in this complaint were taken to retaliate against Kirk, and to carry on a deliberate effort to restructure the leadership of the Career and Technical Department so that it is entirely female.

50. Kirk has been injured by the discrimination associated with filling administrative positions in the CTE Department. He has lost the opportunity to earn more money. His career prospects have also been injured, because he has been denied the opportunity to gain additional management experience in the vocational education field.

## Injuries

51. Kirk has been significantly injured as a result of the conduct of the Defendant.  He has suffered humiliation, anxiety, and has been concerned and worried that he will face job loss or other retaliation.  Additionally, he has lost salary income and economic opportunity by virtue of the School District's failure to promote him for the

10

administrative position. His career has been damaged because he has been denied numerous opportunities to assume supervisory or administrative positions.

## Causes of Action
## Count I - Sex Discrimination under Title VII of the Civil Rights Act of 1964
## <u>Kirk v Pittsburgh Board of Education</u>.

52. Plaintiff incorporates the preceding paragraphs as if fully restated herein.

53. Title VII of the Civil Rights Act of 1964 (Title VII) prohibits discrimination on the basis of sex.

54. The Pittsburgh School District is an employer as defined by Title VII.

55. The conduct of the Defendant, Pittsburgh School District, which includes but is not limited to reserving administrative and supervisory positions in the CTE Department for females, and rejecting Kirk's career and promotional aspirations due to his sex violates Title VII of the Civil Rights Act.

56. Kirk satisfied all the requisites for invoking Title VII of the Civil Rights Act, in that he filed a timely charge of discrimination with the PHRC, which was cross-filed with the EEOC, which alleged gender discrimination, and the EEOC has now issued a Right To Sue Letter with respect to that charge.

57. This Court, therefore, has jurisdiction over the matters raised in that charge, and may grant Kirk all the relief to which he is entitled under Title VII of the Civil Rights Act.

## Count II - Sex Discrimination under the Pennsylvania Human Relations Act

### Kirk v Pittsburgh Board of Education

58. Plaintiff incorporates the preceding paragraphs as if fully restated herein.

59. The Pennsylvania Human Relations Act (PHRA) prohibits discrimination on the basis of sex.

60. Kirk, a male employee, is protected against discrimination based on sex by the PHRA.

61. Pittsburgh Public Schools is an employer as defined by the Pennsylvania Human Relations Act (PHRA).

62. The conduct of the Defendant, Pittsburgh School District, which includes but is not limited to of reserving administrative and supervisory positions in the CTE Department for females violates the Pennsylvania Human Relations Act.

63. Kirk satisfied all the requisites for invoking the Pennsylvania Human Relations Act, in that he filed a timely charge of discrimination, which alleged discrimination. The Pennsylvania Human Relations Commission closed the case within the last two years, therefore Kirk has exhausted all of the administrative requirements for bringing this action.

64. This Court, therefore, has jurisdiction over the matters raised in that charge, and may grant Kirk all the relief to which he is entitled under the Pennsylvania Human Relations Act.

## Count III - Violation of 42 U.S.C. §1983, Denial of Equal Protection

### Kirk v School District, Angela Mike and Jerri Lippert

65. Plaintiff incorporates the preceding paragraphs as if fully restated herein.

66. Each of the Defendants have acted under the color of state law and have deprived Kirk of rights, privileges and amenities guaranteed by the Equal Protection Clause of the Fourteenth Amendment to the Constitution.

67. The Pittsburgh School District and its decision makers have discriminate against Kirk and other males, due to their sex, when filling supervisory positions in the CTE Department.

68. Decision makers in the Pittsburgh School District, including Jerri Lippert, Angela Mike and other policymakers, have deliberately ensconced an entirely female staff in the supervisory and administrative positions of the CTE Department. In order to achieve this end, they have discriminated against Kirk and other males.

69. This sex-based discrimination has been deliberate and constitutes a violation of the Equal Protection Clause of the United States Constitution. Therefore, rights secured to Kirk by 42 U.S.C. §1983 have been violated.

70. Kirk requests the Court assume jurisdiction over his claims under 42 U.S.C. §1983 and provide him all relief to which he is entitled under that statute.

## Count IV – Retaliation under Title VII
### Kirk v Pittsburgh Board of Education

71. Plaintiff incorporates the preceding paragraphs as if fully restated herein.

72. Title VII prohibits employers and their agents from retaliating against an employee who opposes sex-based discrimination, or files a charge of discrimination under the Act.

73. As described in this Complaint, Kirk was subject to retaliation once he filed the Charge of Discrimination with the Pennsylvania Human Relations Commission, which was cross-filed with the EEOC.

74. Kirk has filed his second Charge of Discrimination with the EEOC alleging that he has been denied Title VII rights as a result of the School District retaliating against him, including the impending elimination of his job and the welding program.

75. These allegations are within the scope of the first EEOC investigation and therefore it is right for this Court to adjudicate them. Alternatively, Kirk has filed a second Charge of Discrimination with the EEOC at 533-2012-00485, and requested a Right To Sue Letter from the EEOC in this regard.

76. Kirk should be deemed to have satisfied the administrative requisites for alleging a retaliation claim against the School District, and joining that retaliation claim to this action.

### Count V – Retaliation under the PHRA
### Kirk v Pittsburgh Board of Education

77. Plaintiff incorporates the preceding paragraphs as if fully restated herein.

78. The PHRA prohibits employers and their agents from retaliating against an employee who opposes sex-based discrimination, or files a charge of discrimination under the Act.

### Count VI – Retaliation In Violation of 42 U.S.C. §1983
### Kirk v Pittsburgh Board of Education, Angela Mike and Jerri Lippert

79. Plaintiff incorporates the preceding paragraphs as if fully restated herein.

80. When Kirk filed his charge of discrimination with the EEOC/PHRC, he was exercising rights afforded and protected by the First Amendment's free speech clause, as well as the petition clause. As detailed in this Complaint, Kirk has engaged in other protected activity since the filing of his EEOC/PHRC Charge.

81. Kirk's charge of discrimination outlined and detailed systemic and persistent discrimination on the basis of sex, with respect to filling supervisory and administrative positions in the CTE Department.

82. The supervisory positions in the CTE Department have a wide impact on students residing in the School District. They govern the provision of vocational or technical career education to such students, and therefore discrimination in CTE Department is a matter of public importance.

83. In violation of his rights, the Defendants retaliated against him. He was denied promotional opportunities, arbitrarily denied authorization to proceed with a fully-funded grant initiative and otherwise punished for having engaged in protected activities.

84. The retaliation has continued to the point that the School District has eliminated the welding program from its CTE offerings. This decision was directly engineered, manipulated and achieved by Mike and Lippert, who are policymakers for the School District, and supported by the Board.

85. Mike and Lippert were responsible for the retaliation. At all times they was acting under color of state law.

86. As the Executive Director of the CTE Department, Mike was a policymaker. Lippert is also a policy maker by virtue of her role as Chief Academic Officer of the Pittsburgh School District.

87. The Defendants violated Kirk's rights under 42 U.S.C. §1983, as they deprived Kirk of rights and privileges guaranteed by federal law.

## Count VII – Violation of Title IX

### Kirk v Pittsburgh Board of Education

88. Plaintiff incorporates the preceding paragraphs as if fully restated herein.

89. Title IX of the Education Act, 20 U.S.C. §1681, prohibits gender discrimination in the form of denial of access to educational opportunities on the basis of sex.

90. The School District's practice of awarding administrative positions solely to women is in violation of 20 U.S.C. §1681.

91. The School District receives grant money from the federal government and is governed by the provision of Title IX.

92. The actions which have been described in this Complaint have been promoted and advanced by high officials in the School District and consequently violate the School District's responsibilities under Title IX to not condition access to educational opportunities or jobs based upon sex.

93. The retaliation which Kirk has detailed in this Complaint also violates Title IX of the Education Act. In other words, because Kirk complained to the EEOC and PHRC about sex discrimination, and because those complaints reached the School District, Kirk was subjected to retaliation in violation of Title IX of the Education Act.

## Count VIII – Claim Under Pennsylvania Whistle Blower Law
## 43 P.S. § 1423

### Kirk v Pittsburgh School District, Angela Mike and Jerri Lippert

94. Plaintiff incorporates the preceding paragraphs as if fully restated herein.

95. Kirk is an employee of the Pittsburgh School District, and prior to the elimination of his job, he made a number of good-faith reports of waste, wrongdoing, or other matters engaged in by the Pittsburgh School District management. As noted, Kirk reported that he had secured a grant to teach students welding during the summer, and Angela Mike rejected the grant.

96. Kirk also reported several instances where Mike and other managers of the CTE Department failed to provide equipment, material and other matter, which was necessary for the safety of his students. These reports were made to board members, as well as to responsible administrators.

97. The report of wrongdoing was made in good faith and was made by Kirk without malice or consideration of personal benefit, and believed to be true. The conduct which Kirk reported involved waste, wrongdoing, and that misuse of the School District's funds or the misapplication of such funds, or violation of regulation, code conduct, or ethics designed to protect the interest of employer.

98. The Defendants retaliated against Kirk. The individual Defendants contrived reasons to justify the elimination of Kirk's job. The School District, in fact, eliminated Kirk's job. This conduct violated Pennsylvania's Whistle Blower Law.

99. Wherefore, Kirk requests this Court assume supplemental jurisdiction over his whistle-blower claim. 43 P.S. § 1423(a) provides that a person who alleges a

violation may bring a civil action in a court of competent jurisdiction seeking appropriate injunctive relief and/or damages.

## Relief

WHEREFORE, Plaintiff requests this Court assume jurisdiction in this matter and award him all compensatory damages, back pay, damages for future economic loss that he might sustain as a result of the illegal conduct which is the subject of this action, as well as reasonable counsel fees and such other relief as is just and appropriate. Plaintiff seeks monetary judgment that exceeds $50,000.00.

Respectfully Submitted,

/s/Edward A. Olds
Edward A. Olds, Esquire
PA I.D. No. 23601

1007 Mount Royal Boulevard
Pittsburgh, PA 15223
412-492-8975
*Attorney for Plaintiff*